1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10    JOHN JAY SPANGLER,

11            Plaintiff,                        No. CIV S-10-1582 DAD

12        vs.

13    MICHAEL J. ASTRUE,                     ORDER
      Commissioner of Social Security,
14
              Defendant.
15    _____/

16            This social security action was submitted to the court without oral argument for

17    ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18    judgment.  For the reasons explained below, plaintiff's motion is granted, defendant's motion is

19    denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this

20    matter is remanded for further proceedings consistent with this order.

21                              **PROCEDURAL BACKGROUND**

22            On June 18, 2008, plaintiff filed an application for Disability Insurance Benefits

23    (DIB) under Title II of the Social Security Act (the Act), alleging disability beginning on

24    December 15, 2007 due to problems with his heart, hearing loss, vision loss and high cholesterol.

25    (Transcript (Tr.) at 83-85, 90.)  Plaintiff's application was denied initially on August 12, 2008,

26    and upon reconsideration on December 5, 2008.  (Id. at 62-66.)  A hearing was held before an

                                                 1

Administrative Law Judge (ALJ) on October 27, 2009.  (Id. at 27-50.)  Plaintiff was represented by counsel and testified at the administrative hearing.  In a decision issued on January 29, 2010, the ALJ found that plaintiff was not disabled.  (Id. at 11-19.)  The ALJ entered the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 1, 2012.
>
> 2.  The claimant has not engaged in substantial gainful activity since December 15, 2007, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3.  The claimant has the following severe impairments: status-post aortic valve replacement and coronary artery disease (20 CFR 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift/carry, push/pull 20 pounds occasionally and 10 pounds frequently, sit eight hours with normal breaks, stand/walk six hours with normal breaks, avoid climbing ladders/ropes/scaffolds, concentrated pulmonary irritants, unprotected height, and moving machinery.
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7.  The claimant was born on February 27, 1958 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

/////

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2007 through the date of this decision (20 CFR 404.1520(g)).

(Id. at 13-18.)

On May 21, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (Id. at 1-4.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on June 23, 2010.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff argues that the ALJ committed the following four principal errors in finding him not to be disabled: (1) the ALJ applied an incorrect legal standard to evaluate plaintiff's cardiac impairments and limitations; (2) the ALJ rejected the opinion of plaintiff's

4

treating physician, Dr. Peter Wolk, without a legitimate basis for so doing; (3) the ALJ rejected plaintiff's own testimony regarding his subjective complaints and functional limitations without legitimate or germane reasons for so doing; and (4) substantial evidence does not support the ALJ's finding that plaintiff has the residual functional capacity to perform light exertion work and the jobs described by the vocational expert (VE).  Each of these arguments are addressed below, although not in the order presented by plaintiff.

**I.     The Opinion of the Treating Physician**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating physician's opinion that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  The ALJ, however, need not give weight to a treating physician's conclusory opinion supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830.  An examining physician's

uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and when an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Id. at 830-31.  Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician _or_ a treating physician."  Id. at 831 (emphasis in original).

Here, plaintiff contends that the ALJ did not have a legitimate basis for rejecting the opinion of plaintiff's treating physician, Dr. Peter Wolk.  Specifically, plaintiff argues that the ALJ improperly rejected Dr. Wolk's September 9, 2009 opinion regarding plaintiff's residual functional capacity set forth in the Cardiac Residual Functional Capacity Questionnaire form.  Therein, Dr. Wolk, a cardiologist, indicated that as a result of his impairments plaintiff could only walk one to two city blocks without a rest or experiencing severe pain, that he could only stand or walk for less than two hours during an eight hour work day, that he needed a job that permitted him to shift from sitting, standing or walking at will, that he could only occasionally carry less than ten pounds and that over the course of an eight hour work day he could only bend ten percent of the time and twist ten percent of the time.[1]  (Tr. at 176.)  Dr. Wolk also opined that plaintiff would often need to take unscheduled breaks during the course of an eight hour work day and that these breaks would need to last an average of ten to fifteen minutes before plaintiff could return to work.  (Id.)  Dr. Wolk stated that plaintiff should avoid moderate exposure to extreme cold, all exposure to extreme heat, high humidity, wetness, noise, fumes, odors, dusts, gases and hazards, that his impairments were likely to produce "good days" and "bad days," and that as a result of his impairments or treatment thereof plaintiff was likely to be absent from work more than three times a month.  (Id. at 177.)

---

[1] "Occasionally" means less than one-third of the working day in an average eight hour working day.  (Tr. at 176.)

1    The ALJ rejected Dr. Wolk's September 9, 2009 opinion, stating:

2    The undersigned accords minimal weight to the (sic) Dr. Wolk's
     cardiac questionnaire as they are not completely supported by
3    diagnostic testing he performed or by clinical findings upon
     examination.  They are also inconsistent with the SA determination
4    and the claimant's daily activities which are at least consistent with
     light work.  Lastly, they were given only minimal weight as no
5    physical difficulties were perceived when he filed his application,
     there is no evidence of cardiac surgery, and Dr. Wolk indicated that
6    while the claimant could not perform his past work he could
     perform less strenuous work indicating the claimant still retained
7    the ability to do work.

8    (Id. at 17.)

9    When asked on the Cardiac Residual Functional Capacity Questionnaire to

10   identify the clinical findings, laboratory and test results establishing plaintiff's medical

11   impairments Dr. Wolk listed plaintiff's February 25, 2008 cardiac catheterization which Dr.

12   Wolk had himself performed.  (Id. at 174.)  According to Dr. Wolk, that procedure revealed: 1)

13   an eighty percent narrowing in plaintiff's right ventricular branch; 2) that the left main appeared

14   to be diseased with forty to fifty percent narrowing in the short vessel before essential subtotal

15   closure of the proximal left anterior descending; and 3) a thirty percent narrowing in the proximal

16   vessel of the circumflex artery.  (Id. at 123.)  Thus, contrary to the ALJ's finding, it is not evident

17   that Dr. Wolk's September 9, 2007 opinion regarding plaintiff's residual functional capacity was

18   unsupported by the diagnostic testing Dr. Wolk performed or by his clinical findings upon

19   examination.

20   While the ALJ rejected Dr. Wolk's September 9, 2009 opinion regarding

21   plaintiff's residual functional capacity, the ALJ "gave great weight" to the physical determination

22   of the nonexamining state agency physician expressed in a Physical Residual Functional Capacity

23   Assessment form completed August 11, 2008 and reaffirmed November 29, 2008.  (Id. at 17,

24   151-60.)  Dr. Wolk, however, was plaintiff's treating physician and, as discussed above, his

25   opinion that is controverted by another doctor may be rejected only for specific and legitimate

26   reasons supported by substantial evidence in the record.  "By rule, the Social Security

1    Administration favors the opinion of a treating physician over non-treating physicians." Orn v.

2    Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  See also Reddick v. Chater, 157 F.3d 715, 725 (9th

3    Cir. 1998) ("The opinions of treating doctors should be given more weight than the opinions of

4    doctors who do not treat the claimant.").

5            Moreover, when Dr. Wolk rendered his opinion of plaintiff's residual functional

6    capacity on September 9, 2009, he had been treating plaintiff for over eight years. See Lester, 81

7    F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him

8    especially qualified to evaluate reports from examining doctors, to integrate the medical

9    information they provide, and to form an overall conclusion as to functional capacities and

10   limitations, as well as to prescribe or approve the overall course of treatment.").  In contrast, the

11   state agency physician was a non-treating, nonexamining physician.  As also noted above, "[t]he

12   opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies

13   the rejection of the opinion of either an examining physician or a treating physician." Ryan v.

14   Comm'r of Soc. Sec., 528 F.3d 1194, 1202 (9th Cir. 2008) (quoting Lester, 81 F.3d at 831).  In

15   this regard, the ALJ's reliance on a form completed by a non-treating, nonexamining agency

16   physician, over the more recent opinion of plaintiff's long time treating physician, is legally

17   flawed.  Such reliance violates the general rule that more weight should be given to the opinion

18   of a treating source than to the opinion of a doctor who did not treat the claimant and fails to

19   recognize that a treating doctor has a greater opportunity to know and observe the patient.

20           Finally, the ALJ rejected Dr. Wolk's September 9, 2009 opinion because he found

21   it to be inconsistent with Dr. Wolk's own indication that "while claimant could not perform his

22   past work he could perform less strenuous work indicating the claimant still retained the ability

23   to work." (Tr. at 17.)  This statement by the e ALJ is, however, inaccurate.  In the September 9,

24   2009 Cardiac Residual Functional Capacity Questionnaire Dr. Wolk did not discuss plaintiff's

25   ability to perform either his past work or less strenuous work.  Rather, Dr. Wolk at that time

26   /////

1  simply provided his opinion as to plaintiff's residual functional capacity.  In a much earlier July

2  2, 2008 Cardiology Office Note, Dr. Wolk did state:

3          I do not think the kind of heavy duty construction work is ideal for
           a patient post bypass, post valve replacement.  If there was

4          something else he could do that was less strenuous, it would
           probably be in his best interest.

5

6  (Id. at 127.)  In this regard, Dr. Wolk was merely acknowledging in a treatment note the obvious

7  - that, given plaintiff's condition, less strenuous work would be preferential to plaintiff's prior

8  heavy duty construction work, not necessarily that plaintiff could in fact perform less strenuous

9  work.

10          On this record, the court concludes that there was not substantial evidence in the

11 record to support the ALJ's decision rejecting the opinion of plaintiff's treating physician, Dr.

12 Wolk, regarding plaintiff's residual functional capacity.

13 **II.     Plaintiff's Testimony**

14          It is well established that once a claimant has presented medical evidence of an

15 underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of

16 his or her symptoms merely because the symptoms are unsupported by objective medical

17 evidence.  Reddick, 157 F.3d at 722; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

18 1997).  Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his]

19 symptoms only by offering specific, clear and convincing reasons for doing so.'"  Light, 119 F.3d

20 at 792 (quoting Smolen, 80 F.3d at 1281).  In evaluating a claimant's subjective testimony

21 regarding the severity of his symptoms, the ALJ may, of course, consider the presence or absence

22 of supporting objective medical evidence, along with other factors.  Bunnell v. Sullivan, 947

23 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285. However, "'the ALJ

24 can reject the claimant's testimony about the severity of [his or] her symptoms only by offering

25 specific, clear and convincing reasons for doing so.'"  Lingenfelter v. Astrue, 504 F.3d 1028,

26 1036 (9th Cir. 2007) (quoting Smolen, 80 F.3d at 1281).  Thus, absent affirmative evidence of

1  malingering, the reasons for rejecting a claimant's testimony must be clear and convincing.

2  Morgan, 169 F.3d at 599.

3          In the present case, the record establishes that plaintiff's medically determinable

4  impairments could reasonably be expected to produce plaintiff's symptoms of chest pain, fatigue

5  and shortness of breath.  Accordingly, the ALJ was required to evaluate the intensity,

6  persistence, and limiting effects of plaintiff's symptoms to determine the extent to which they

7  limit his ability to engage in basic work activities.

8          The court notes at the outset that there is no suggestion of malingering on

9  plaintiff's part anywhere in the record of this case.  Indeed, Dr. Wolk affirmatively stated that

10  plaintiff was not a malingerer.  (Tr. at 174.)  Accordingly, the ALJ was required to provide clear

11  and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.

12  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) ("If there is no affirmative evidence

13  that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting

14  the claimant's testimony regarding the severity of symptoms.").

15          The ALJ found plaintiff's complaints of chest pain only partially credible and

16  found his complaints of exhaustion and shortness of breath not credible, noting that the

17  nonexamining state agency physician determined that plaintiff could perform light work and

18  finding that plaintiff's medical records "undercut" his complaints.  (Id. at 16-17.)  However, as

19  noted above, the ALJ may not discredit the claimant's testimony as to the severity of his

20  symptoms merely because the symptoms are unsupported by objective medical evidence.  See

21  Rollins v. Massanari, 261 F.3d 853, 859 (9th Cir. 2001) ("Instead, the ALJ must discredit the

22  claimant's subjective testimony by finding that she is not credible."); see also Vasquez v. Astrue,

23  572 F.3d 586, 592 (9th Cir. 2009) ("To support a lack of credibility finding, the ALJ was

24  required to 'point to specific facts in the record which demonstrate that [Vasquez] is in less pain

25  than she claims.'") (quoting Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).

26  /////

1        In rejecting plaintiff's testimony, the ALJ also stated that "[t]reating records did

2   not document that [plaintiff] appeared exhausted . . . or exhibited any shortness of breath."  (Id.)

3   This assertion however is belied by the administrative record which establishes that on May 21,

4   2008, Dr. Wolk indicated in a Cardiology Office Note that plaintiff "continues to have fatigue

5   and exertional shortness of breath with physical activity[.]"  (Id. at 128.)  In another Cardiology

6   Office Note, dated July 2, 2008, Dr. Wolk again indicated that plaintiff "still has problems with

7   fatigue, really more shortness of breath."  (Id. at 127.)

8        Finally, the ALJ also stated that his finding with respect to plaintiff's credibility

9   was based in part on plaintiff's "testimony regarding his daily activities [which] are at least

10  consistent with light work."  (Id. at 16.)  In this regard, the ALJ noted that claimant testified at

11  the administrative hearing that he dressed and groomed himself, cooks, does the laundry, cleans

12  the house, does light yard work, mows the law, works on cars as a hobby, shops for groceries and

13  drives.  (Id.)  However, it is well established that social security claimants need not be "utterly

14  incapacitated to be eligible for benefits."  Fair, 885 F.2d at 603.  See also Webb v. Barnhart, 433

15  F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This

16  court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

17  activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

18  any way detract from her credibility as to her overall disability.").  Moreover, in general, the

19  Commissioner does not consider "activities like taking care of yourself, household tasks,

20  hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful

21  activities.  20 C.F.R. § 404.1572(c).

22       For these reasons, the court finds that the ALJ's decision to discredit plaintiff's

23  testimony is not supported by specific, clear and convincing reasons.

24  **III.**   **Residual Functional Capacity**

25       Plaintiff argues that substantial evidence does not support the ALJ's finding that

26  plaintiff has the residual functional capacity ("RFC") to perform light work and, specifically, the

1    jobs described by the vocational expert (VE) at the administrative hearing.  In this regard,

2    plaintiff argues that the ALJ failed to pose a legally adequate hypothetical question to the VE.

3    Specifically, plaintiff contends that the ALJ's determination that plaintiff can perform the jobs

4    described by the VE is based on the ALJ's failure to include in his hypothetical question to the

5    VE any limitations in connection with plaintiff's chest pain, fatigue, exhaustion or the need to

6    take rest breaks.  The court agrees.

7            A claimant's RFC is "the most [the claimant] can still do despite [his or her]

8    limitations."  20 C.F.R. § 404.1545(a).  The assessment of RFC must be "based on all the

9    relevant evidence in [the claimant's] case record."  Id.  See also Mayes v. Massanari, 276 F.3d

10   453, 460 (9th Cir. 2001).  The Commissioner may satisfy his burden of showing that the claimant

11   can perform past relevant work or other types of work in the national economy by taking the

12   testimony of a vocational expert.  Burkhart, 856 F.2d at 1340; Polny v. Bowen, 864 F.2d 661,

13   663 (9th Cir. 1988).

14           Here, the court has already determined that the ALJ improperly rejected the

15   September 9, 2009 opinion of plaintiff's treating physician, Dr. Wolk.  Presumably as a result of

16   this error the ALJ's hypothetical question posed to the VE failed to include the significant work-

17   related limitations indicated by Dr. Wolk.  Specifically, the ALJ's hypothetical assumed that

18   plaintiff could stand and walk six hours out of an eight hour work day, even though Dr. Wolk

19   opined that plaintiff could only stand and walk less than two hours in an eight hour work day.

20   (Tr. at 46.)  The ALJ's hypothetical question posed to the VE also did not include the limitation

21   that plaintiff would often need to take unscheduled breaks, lasting ten to fifteen minutes, during

22   the work day and that plaintiff would need to miss more than three work days a month due to his

23   impairments or treatment as indicated by Dr. Wolk.  Moreover, the ALJ's hypothetical question

24   to the VE failed to include any reference to the limitations imposed by plaintiff's chest pain.  See

25   Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the

26   vocational expert must set out all the limitations and restrictions of the particular claimant,

12

1 | including, for example, pain and an inability to lift certain weights.") (emphasis in original).

2 | Based on the VE's answer to the ALJ's incomplete and flawed hypothetical, the ALJ concluded

3 | that plaintiff was capable of performing the jobs of cashier, mail clerk and office helper.  (Id. at

4 | 18.)

5 |          Thus, the ALJ's failure to credit the opinion of plaintiff's treating physician, Dr.

6 | Wolk, led to the erroneous exclusion of significant limitations from the hypothetical question

7 | posed to the VE and the VE's answer relied upon by the ALJ.  See Holohan v. Massanari, 246

8 | F.3d 1195, 1208-09 (9th Cir. 2001) (holding that the ALJ is required to question a vocational

9 | expert in a manner that properly takes into account the limitations on the plaintiff's abilities to

10 | engage in various work-related functions).  Moreover, when plaintiff's counsel posed an

11 | appropriate hypothetical question that included the limitations found by plaintiff's treating

12 | physician, the VE responded that such limitations would require "special accommodation"

13 | thereby excluding plaintiff from "competitive employment."  (See Tr. at 48-49.)[2]

14 | **CONCLUSION**

15 |          The decision whether to remand a case for additional evidence or to simply award

16 | benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

17 | 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  The Ninth Circuit Court of Appeals

18 | has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose

19 | would be served by further administrative proceedings, or where the record has been thoroughly

20 | developed."  Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs.,

21 | 859 F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting

22 | disability claims.  Holohan, 246 F.3d at 1210; Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at

23 | 1401.

24 | _____

25 |     [2]  Having found in plaintiff's favor as to the three claimed errors discussed above, the court finds it unnecessary to address plaintiff's argument that the ALJ also erred in applying the

26 | incorrect legal standard in evaluating plaintiff's cardiac impairments and the limitations imposed thereby.

Here, it does not appear that a useful purpose would be served by remanding for the taking of additional evidence.  Plaintiff filed his application for DIB over three years ago. When the treating physician's opinion is given the proper weight, the evidence of record establishes that plaintiff was disabled when Dr. Wolk issued his opinion on September 9, 2009. Dr. Wolk's opinion was based on the results of plaintiff's February 25, 2008 cardiac catheterization.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 15, 2007.  (Tr. at 13.)

Moreover, the VE's answer to a hypothetical question that included the appropriate limitations established that when plaintiff's impairments are properly considered, those limitations exclude him from "competitive employment."  (Tr. at 49.)  Had the ALJ based his decision on the VE's testimony in response to that proper hypothetical question which included all of plaintiff's limitations, the ALJ would have found plaintiff disabled.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007) (finding the claimant entitled to benefits where he needed to lie down two or three times each day for up to 45 minutes due to pain and where the vocational expert testified that there were no jobs available in the national economy in light of that limitation).

Accordingly, the court finds it appropriate to remand this case with the sole direction to award benefits on the ground that plaintiff has been under a disability, as defined by the Social Security Act, since December 15, 2007, the alleged onset date.  See Moore v. Comm'r of Soc. Sec. Admin, 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians); Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 13) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 14) is denied;

1        3.  The Commissioner's decision is reversed; and

2        4.  This case is remanded with instructions to award Disability Insurance Benefits

3  under Title II of the Social Security Act as of December 15, 2007.

4  DATED: September 23, 2011.

5

6                              _Dale A. Drozd_

7                    DALE A. DROZD
                     UNITED STATES MAGISTRATE JUDGE

8  DAD:6
   Ddad1/orders.socsec/spangler1582.order

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26